DATE FILED: March 21, 2022 4:57 AM
FILING ID: 6FE14AD9A89C4
CASE NUMBER: 2022CV30196

| DISTRICT COURT, DOUGLAS COUNTY, COLORADO<br>Court Address: 4000 Justice Way<br>Castle Rock, CO 80109<br><br>PLAINTIFF: **TERRI FISHER**<br><br>v.<br><br>DEFENDANT: **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** | ▲ COURT USE ONLY ▲ |
|---|---|
| Jill M. Jackson, #44517<br>The Law Office of Jill M. Jackson<br>650 S. Cherry Street, Suite 1225<br>Denver, CO 80246<br>Telephone: 303-818-7209<br>Fax: 303-379-7676<br>Email: Jill@jilljacksonlaw.com<br>***Attorney for Plaintiff*** | Case Number:<br><br>Div.: |
| **COMPLAINT FOR DAMAGES AND JURY DEMAND** | |

**COMES NOW** the Plaintiff, Terri Fisher, and hereby submits the following Complaint for Damages and Jury Demand against Defendant State Farm Mutual Automobile Insurance Company and asserts:

## I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Terri Fisher, ("Plaintiff") was a resident of the State of Colorado, Douglas County, at the time of the subject car crash, though Plaintiff is currently a resident of Hawaii.

2. State Farm Mutual Automobile Insurance Company ("Defendant State Farm") is a corporation with a registered agent in the State of Colorado and regularly conducts business activities in the State of Colorado.

3. Upon information and belief, Defendant State Farm's registered agent is located at 1900 W. Littleton Boulevard, Littleton, CO 80120.



EXHIBIT A

4. Jurisdiction is proper in this action pursuant to C.R.S. §13-1-124.

5. Venue is proper in this action pursuant to C.R.C.P. 98(c)(5).

6. At all times relevant herein, Plaintiff was an "insured" pursuant to the language of Defendant State Farm's insurance policies issued to Plaintiff.

7. Plaintiff is a first-party claimant pursuant to C.R.S. §10-4-609 and C.R.S. §10-3-1115.

## II. GENERAL ALLEGATIONS

8. Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 to 7 of this Complaint as if set forth verbatim.

9. On December 23, 2019, Plaintiff was the restrained driver and registered owner of a 2015 Toyota Rav4.

10. As Plaintiff made a left-hand turn from southbound Commons Street to Eastbound Lincoln Avenue, in Lone Tree, Colorado, she was rear-ended by another driver, Brent Macklin, in a Kia Optima.

11. The crash was entirely the fault of Brent Macklin, and Plaintiff in no manner contributed to the occurrence of the car crash on December 23, 2019.

12. As a result of the crash, Plaintiff suffered significant personal injuries. Specifically, Plaintiff suffered a closed head injury–concussion, cervical strain, pseudobulbar affect, cognitive difficulties, post-traumatic headache, fatigue, dizziness, depression, irritability, anxiety, tooth fractures and underwent major dental procedures to repair her teeth.

13. On December 23, 2019, immediately following the accident, Plaintiff presented to Centura Health Meridian Emergency Department, to undergo evaluation and treatment of her injuries. She was diagnosed with a closed head injury and cervical strain.

14. Plaintiff continued to endure severe and persistent pain in her head and neck, including cognitive impairments and communication deficiencies.

15. On January 10, 2020, Plaintiff presented to Dr. Heidi Christensen's concussion clinic, as instructed for evaluation and treatment, and was diagnosed with concussion—with no loss of consciousness, disturbance in speech, and fractured tooth.

16. On January 24, 2020, Plaintiff presented to speech language pathologist Kendra Terrill, MS, CCC-SLP, at Sky Ridge Medical Center, to evaluate and treat her cognitive communication impairments. She was diagnosed with post-concussion syndrome, mild cognitive impairment, and cognitive communication deficit.

17. On February 10, 2020, Plaintiff presented to Dr. Steven Gulevich at Alpine Neurology for evaluation and treatment, for her concussion and associated pain and symptoms. She was diagnosed with cervical strain, pseudobulbar affect, post-traumatic headache, dizziness, and cognitive difficulties.

18. On February 17, 2020, in physical therapy with clinician Elizabeth S. Kevil, PT, DPT, OCS, CSCS, at Sky Ridge Medical Center, Plaintiff presented with cervical spine discomfort and headache. A post-concussion syndrome diagnosis was made as well as spondylosis, cervicalgia, weakness, and aberrant posture.

19. On February 24, 2020, Plaintiff presented to clinician Kayla Garriott, OTR/L at Sky Ridge Medical Center, occupational therapy, for evaluation and treatment of oculomotor deficits. She was diagnosed with post-concussion syndrome, visual discomfort bilateral, unspecific visual disturbance, headache, and abnormal posture.

20. As a direct and proximate result of the December 23, 2019, car crash, Plaintiff incurred medical expenses in the approximate amount of $45,791.

21. As a direct and proximate result of the December 23, 2019, car crash, Plaintiff is no longer able to drive for Door Dash and has lost approximately $1,000 per month, totaling $26,000 in lost income to date.

22. As a direct and proximate result of the December 23, 2019, car crash, Plaintiff suffered injuries which caused pain.

23. As a direct and proximate result of the December 23, 2019, car crash, Plaintiff suffered permanent impairment.

24. At the time of the car crash, Brent Macklin maintained a policy of liability insurance with Farmers Insurance, which such policy afforded limits of $50,000 per person coverage for bodily injury claims.

25. Farmers Insurance offered to pay its policy limits on behalf of Brent Macklin.

26. At the time of the accident, Plaintiff was afforded coverage by Defendant State Farm, Policy Number: 456268606A

27. Plaintiff sought permission from Defendant State Farm to accept Farmers Insurance Company's policy limits offer in the amount of $50,000, without Plaintiff being required to waive any rights to proceed against other coverages afforded to Plaintiff by Defendant State Farm.

28. Defendant State Farm granted such permission on or about July 9, 2021.

29. Following receipt of such permission, Plaintiff settled with Farmers Insurance Company and Brent Macklin for the policy limits afforded by such Farmers Insurance policy in the amount of $50,000.

30. Brent Macklin was underinsured for the purposes of covering Plaintiff's injuries, damages, and loses.

31. Plaintiff purchased underinsured motorist ("UIM") coverage from Defendant State Farm before the subject crash.

32. Plaintiff paid additional premiums for her UIM coverage.

33. Defendant State Farm knows insureds purchase UIM coverage to protect themselves in case they are injured through no fault of their own.

34. Such policy of insurance, as issued by Defendant State Farm, included UIM coverage with limits of $250,000 per person coverage for bodily injury.

35. Subsequently, Plaintiff submitted a written UIM demand to Defendant State Farm with documentation of the Plaintiff's injuries and requested that State Farm pay the contractual UIM benefit limits of $250,000.

36. Plaintiff provided medical records, medical bills, wage documents, and medical opinions to Defendant State Farm for purposes of evaluating Plaintiff's UIM claim.

37. Plaintiff also provided Defendant State Farm with a medical opinion letter from her longtime psychiatrist Dr. Kenneth D. Krause, M.D., summarizing Plaintiff's medical history, symptomology, injuries, diagnoses, and treatment. Including supporting Plaintiff's inability to safely drive for Door Dash as she was able to do prior to the December 23, 2019, vehicular accident.

38. According to Dr. Krause, Plaintiff never returned to the level of emotional stability she had prior to the motor vehicle accident.

39. Rather than make a substantive response to Plaintiff, Defendant State Farm requested that Plaintiff provide a blanket authorization of release of medical records and that Plaintiff be examined by a physician chosen by State Farm.

40. However, Defendant State Farm refused to schedule Plaintiff's medical examination, until they received Plaintiff's medical records, despite the fact that Plaintiff had already provided Defendant State Farm with those same medical records.

41. Plaintiff complied with the Defendant’s requests.

42. On or about August 17, 2021, provided a blanket medical records release to Defendant State Farm.

43. On January 14, 2022, Plaintiff was seen by Jennifer Yamashita, Ph.D., Clinical Neuropsychology.

44. Dr. Yamashita is a clinical psychologist in Honolulu, HI. She is not a licensed medical doctor.

45. There is no treating doctor-patient relationship between Plaintiff and Dr. Yamashita.

46. Upon information and belief Dr. Yamashita is compensated for performing “independent” medical exams almost exclusively on behalf of insurance companies.

47. Upon information and belief Dr. Yamashita is compensated by vendor MES Solutions on behalf of Defendant State Farm.

48. Plaintiff received Dr. Yamashita’s report on February 14, 2022.

49. Dr. Yamashita’s report contained information and conclusions inconsistent with facts surrounding the crash, Plaintiff’s prior medical history and treatment, her injuries, symptoms and complaints, and her medical records from Plaintiff’s own treating physicians.

50. On March 2, 2022, Defendant State Farm sent Plaintiff a dental review report completed by dentist Steven R. Kilpatrick, D.D.S.

51. Dr. Kilpatrick never examined, evaluated, or treated Plaintiff.

52. Upon information and belief Dr. Kilpatrick is compensated for performing "independent" medical exams almost exclusively on behalf of insurance companies.

53. Upon information and belief Dr. Kilpatrick is compensated by vendor MES Solutions on behalf of Defendant State Farm.

54. Dr. Kilpatrick's report contained information and conclusions inconsistent with Plaintiff's injuries, symptoms, complaints, treatment, and medical records from her own treating dentists.

55. Defendant State Farm has been provided adequate opportunity to review, investigate, and evaluate the UIM claim.

56. Defendant State Farm has refused to pay any monies to Plaintiff pursuant to the UIM coverage afforded by the relevant State Farm policy.

57. Because there was inadequate liability coverage available from the driver that caused the crash, Plaintiff is entitled to UIM benefits under her Policy with Defendant State Farm.

58. Defendant State Farm's evaluation of Plaintiff's claim and their refusal to offer any UIM benefits was without a reasonable basis in fact or law.

59. Defendant State Farm failed to fairly evaluate Plaintiff's claim, and in bad faith denied Plaintiff the UIM benefits to which she is entitled under her insurance contract.

60. Defendant State Farm has failed to properly, fairly or reasonably investigate and evaluate Plaintiff's UIM claim despite an ongoing duty to do so.

61. Defendant State Farm owed Plaintiff the following duties, among others: (a) a duty to honor the UIM insurance contract; (b) a duty to conduct a prompt reasonable and diligent investigation of the facts to determine the validity of the claim made by the Plaintiff against Defendant State Farm; (c) a duty to evaluate the Plaintiff's claim fairly; (d) a duty to attempt in

good faith to effectuate a prompt, fair, and equitable settlement of the claim; (e) a duty to act promptly and reasonably in settling the claim; (f) a duty to not put its insured through unnecessary litigation; (g) a duty not to put its insured's assets at risk; (h) a duty to refrain from actions that would injure the Plaintiff's ability to obtain the benefits of the insurance contract; and ( i) a duty of good faith and fair dealing.

62. Defendant State Farm's failure to fairly or reasonably investigate and evaluate Plaintiff's UIM claim has compelled Plaintiff to institute litigation in order to recover the UIM benefits to which she is entitled under the insurance contract.

63. Defendant State Farm knew or should have known that its evaluation of Plaintiff's claim did not account for the full spectrum of facts surrounding the crash or the economic and non-economic damages Plaintiff incurred as a result of the crash and is legally entitled to collect under the insurance contract.

64. Defendant State Farm undervalued the UIM claim in order to withhold UIM benefits from Plaintiff.

65. The practices and procedures employed in this claim by Defendant State Farm have the effect of impermissibly diluting Plaintiff's recovery of her first party UIM benefits.

**III. FIRST CLAIM FOR RELIEF**
**(Breach of Insurance Contract – Defendant State Farm)**

66. Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 to 65 of this Complaint, as if set forth verbatim.

67. Defendant State Farm issued an insurance contract to Plaintiff that included UIM benefits, and the contract was in effect on the date of the crash with Brent Macklin.

68. Plaintiff complied with all conditions precedent to payment of UIM benefits under the insurance contract and was entitled to recover full UIM benefits under the above-referenced insurance policy.

69. Defendant State Farm breached the insurance contract by failing to fairly evaluate Plaintiff's UIM claim and refusing to compensate Plaintiff for her injuries, damages, harms and losses incurred as a result of the crash. As such, Defendant State Farm has unreasonably delayed/denied Plaintiff the full benefits to which she is entitled under the insurance policy.

70. Defendant State Farm's breach of contract has caused and continues to cause Plaintiff injuries, damages, harms, and losses.

**IV. SECOND CLAIM FOR RELIEF**
**(Bad Faith Breach of Insurance Contract – Defendant State Farm)**

71. Subject to and without waiving the foregoing cause of action, Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 to 70 of this Complaint, as if set forth verbatim.

72. As a company in the business of auto insurance, Defendant State Farm at all times had a duty of good faith and fair dealing pertaining to the handling of Plaintiff's UIM claim, and a duty to abstain from deceptive or misleading practices and keep, observe, and practice the principles of law and equity in all matters pertaining to the business of insurance.

73. Every insurance contract contains an implied covenant of good faith and fair dealing and imposes on insurers a duty to act in good faith with their insureds. Pursuant to its implied duty of good faith and fair dealing, Defendant State Farm owed Plaintiff an obligation to treat Plaintiff's interests with equal consideration to its own interests.

74. Defendant State Farm breached its duty of good faith and fair dealing owed to Plaintiff, by one or more of the following acts or omissions:

a. Failing to give equal consideration to the interest of Plaintiff, its insured;

b. Failing to diligently search for evidence that supported their insured's claims;

c. Seeking to discover only evidence that defeated their insured's claims;

d. Depriving Plaintiff of the benefits and protections of the contract of insurance;

e. Unreasonably delaying and/or withholding benefits under the UIM coverage provisions without a reasonable basis, with knowledge or reckless disregard;

f. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance policy;

g. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

h. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims after its liability has become reasonably clear; and

i. Forcing Plaintiff into the costly and lengthy process of litigation.

75. Defendant State Farm's bad faith is ongoing.

76. Defendant State Farm's conduct was unreasonable, and Defendant State Farm either knew or recklessly disregarded the fact that such conduct was unreasonable.

77. Defendant State Farm's breach caused and continues to cause Plaintiff harms and losses in an amount to be determined at trial.

## V. THIRD CLAIM FOR RELIEF
## (Unreasonable Delay/Denial of a Claim for Benefits Pursuant to C.R.S. §§ 10-3-1115-1116 –Defendant State Farm)

78. Subject to and without waiving the foregoing causes of action, Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 to 77 of this Complaint, as if set forth verbatim.

79. Defendant State Farm is an insurer engaged in the business of auto insurance in the State of Colorado.

80. C.R.S.§10-3-1115 prohibits an insurer from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

81. Plaintiff is an insured under Defendant State Farm's policy issued to the Plaintiff's household, which was in effect on the above-referenced date of loss. Plaintiff is a first-party claimant within the meaning of C.R.S. §10-3-1115.

82. Defendant State Farm's unreasonable delay and/or denial of the full benefits that Plaintiff is entitled to receive under Plaintiff's UIM claim was and continues to be in violation of C.R.S. §10-3-1115.

83. As a result of Defendant State Farm's conduct and violations stated herein, Plaintiff is entitled to the statutory recovery contemplated by C.R.S. §10-3-1116, including two times the covered benefit and reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant and in her favor for all general and special damages, all statutory and necessary costs, including but not limited to expert witness fees and expenses incurred in the investigation and discovery required to present Plaintiff's claims, interest from the date of the occurrence, post judgment interest at the statutory rate, and for such other and further relief as the Court shall deem just, proper and appropriate under the circumstances.

## VI. JURY DEMAND

Plaintiff demands a trial by jury as to all claims so triable.

Respectfully submitted this 21st day of March 2022,

*Original Signature on File at the Law Office of Jill M. Jackson, LLC.*

*/S/ Jill M. Jackson*
Jill M. Jackson, #44517
650 S. Cherry Street, Ste. 1225
Denver, CO, 80246
***Attorney for Plaintiff***

**Plaintiff's Address:**
**75 Kihapia St. #14**
**Kailua, HI 96734**



EXHIBIT A